Thank you, Your Honor. Michael Wall for Branch Bank and Trust. I have with me Mr. Geiser. This is a consolidated appeal. He represents Commonwealth land title. I would like to spend about half of the time and then turn the time over to him if I can. I'd like to address... I'm eating up your time but you'll get this part back. Do either or both of you intend to save time for rebuttal? I mean I do not. I might save a minute, but we'll see how the argument goes. Okay, well you've got a minute free because I've used it with the logistics, so go for it. Quickly on the jurisdictional issue, this is a confirmation of a plan and there's multiple cases which find that confirmation of a plan itself is independent. I mean it's discrete and it's final and therefore appealable and all of the parties have argued, citing cases that there is jurisdiction over at least this part of the the case that's before Your Honors. And your client in particular is willing to go forward and view this as final even not knowing what's going to happen with regard to the other case? Well with respect to this part of it, the confirmation of the plan, if the plan is confirmed there's still there's still more to go on in the court, but I mean that would be the end of the confirmation of the plan. So yes my client would accept this as the final determination of that. Well I guess I want to push it just a little further because it seems to me that the other case, if what the district court did in the other case is what you have to do, you can't confirm the plan can you? Because you're going to have to go back and do more, if you will, on whether there's a different set of creditors who get paid at different times. We believe that there's still issues with respect to which creditors get paid and in which way and that's what the other appeal is partially about. Well I understand that's why it seems to me, and I'm not trying to push it a little bit, but I'm still trying to understand why you want me to talk about error in confirming the liquidated plan of reorganization or error in putting the county taxing the class, when if in fact you have to do what the district court suggested you need to do in the other case, that plan would be totally undone. If in fact they succeed. I mean we're fighting about whether the state court decision is controlling or whether it isn't controlling. So again I'm pushing you a little bit but I'm having a tough time why you're really pushing this. This other case could be a part of this case. I mean it could be because it could be an issue which would be raised at the end of the plan and the confirmation thereof. So we're back with that issue. I understand that concern, Your Honor, but lenders, the plan puts lenders' claim first but it doesn't determine the amount of that claim. So if the plan is still confirmed, we would still go back and litigate if under the ruling of the district court in the other case as to the amount of lenders' claim that has been set in front of Branch Bank and Trust's claim. So the plan only talks about the order in which the claims will be paid. It doesn't talk about the amount of the claim. That's always been our position. So confirmation of the plan would not necessarily render moot the other issues that we have to discuss in the other case. Could liquidation occur in the meantime? I mean can the plan be put, will anything happen with the plan until those other issues are resolved? No. Nothing will happen with the plan. There would have to be other issues resolved before the plan could be implemented. But there would be nothing else that would have to be resolved with respect to determining what plan we're going under. So the plan itself is discreet and that's, there are multiple cases that we have cited from the Ninth Circuit stating that this is an appealable order that we're addressing here. And the part that I would like to discuss is exactly that part about Clark County being classified as a, as somebody who could vote in favor of the plan as an interest, the lenders' interest was clearly recognized as being an insider interest and that's an issue that's still ongoing and that's why they couldn't vote in favor of the plan and so they had to come up with somebody that they could put into the plan. Their way of doing that was to put Clark County with their $48,000 claim, who doesn't really have an interest in this, and so that the legitimate creditors simply weren't able to do what the plan, what the statute was intended for. That's for all of the legitimate creditors to come up with a plan that treats everyone fairly. In order to confirm a plan, Section 1129 has mandatory provisions and the first two are pretty much procedural, but the third one, which is that the plan has to be proposed in good faith. Simply this plan is not proposed in good faith on multiple levels. And certainly by putting Clark County as a creditor who has got a claim that's classified so that that class would vote in favor of the plan. Is Clark County a creditor? Clark County is a creditor. It's a preexisting creditor. We don't have what we had in the last case about something being constructed for this. No, it's not that. It's that under the plan, under Section D, all tax claims, whether they're secured or not secured or unsecured, they're all given preferential treatment. So Clark County is already in preferential treatment, and tax — They're all given preferential treatment, but that doesn't say anything about whether they can't be classified differently. It doesn't go directly to the issue of classification, and only — And as I understand it, is to the classification itself, there is nothing to suggest that this secured tax claim could not be classified, except that you suggest that because they all have to be treated separately, that that automatically says they can't be classified. Well, the statute, specifically the statute that deals with unclassified claims or unsecured claims, specifically says that tax claims cannot be classified. There's not a statute that directly addresses this issue, but we do have Section D, which says that secured tax claims have to be treated in the same manner and over the same period as unsecured. But so what? That doesn't mean you can't classify them. Courts have found that that language and the policy reasons for having — for treating them differently, it makes it that you really should not be able to classify them. What court? We've — I mean, I can't find a court that suggests that what has happened here is dead-set illegal. We cited a number of courts that address the issue. I understand where you cited the courts, but then I went to the different places where they cited, and they don't have this particular issue. What happened here is we have, which is not usual, a secured tax claim. That's not usual. They don't need it. They come first anyway. That's correct. So we have a secured tax claim. And now we have to look at the statute to see if a secured tax claim can be classified. And I couldn't find a statute that says it can't. Now, I agree with you. It doesn't seem logical to classify it because they have to have the same treatment. But nobody says they can't. So then at that point, I passed over this classification, and I went to one of your other issues because it didn't seem to me you had any statutory authority for arguing what you were arguing. So let's turn to impairment. That's the issue that my colleague discussed. Oh, you don't want to talk about that one. Okay. Well, we want to give him his time on the stage, so sure, why not? Welcome. Good morning. So we're turning to impairment. Is impairment a finding of fact? Well, I think there's not. Yes. It is. Is it not? Yes. No, no. If it's a finding of fact, what deference do I owe? Right. And we're under the clearly erroneous standard that we were just discussing. Okay. So if we're talking about impairment as a finding of fact, then we're at the same point we were with bad faith. And I owe deference to the district court or the bankruptcy court in this situation for their finding. Correct. What makes it totally illegal? Because if I have a gift to give clear error review, it's got to be totally illegal in order to get out of it. Well, I don't agree that it has to be illegal. There has to be no support for it in the record. It clearly erroneous, a clear mistake. And what we have here, and which has been the question that we've been. Well, I read what they say is their support. If they have some basis, but it disagrees with you, that doesn't mean that I go with you. Well, you have to look at what it is that they actually said. All right. And there is cases, and we talked about this in both of our briefs, about that they're. I mean, what they say is it's going to be paid not immediately. Their name doesn't have to be on the check. They can't hold up what's going to be done. They don't get it directly. They don't get their lien. They get it in 90 days. Right. And they say that's enough to meet my court's broad definition of impairment. And the question always. It is a broad definition. If I had written it, I wouldn't have written it like that, but I wasn't here. And the question always became why. Why are you doing that but to create a class, a voting class? Why are you doing it? There is no basis. The explanation that we get, and this is, it's a distinction between whether or not it's impaired and whether or not it's bad faith. The problem that I have with that is that it doesn't often come that you have a secured claim. With secured creditors, you often give them the right to vote or not vote when you wouldn't not give them normally, because they can stop everything. So just because they have a secured claim is a normal way to classify them and not do them just as a normal creditor. They are. They have the right to come and take your property and end the whole bankruptcy. So give them something classified that says, well, you got a little more involvement. You got a little more influence. Well, I understand that, you know. And so, therefore, the fact that they give up that right to stop the bankruptcy, they have to take their payment in 90 days. It's not so minimal as you would suggest. But here's my response to that, because you're arguing an issue that's somewhat different. You're arguing whether or not they're actually impaired. And I'm not arguing whether or not there's impairment, because there is impairment. Okay. The question is whether or not that impairment was done in bad faith. That really is the question. Okay. So you're going to the bad faith issue. That really is the question, or whether or not it's artificial. Bad faith by whom? By the debtor. The debtor in doing what it did as far as the impairment that it put on the Clark County Taxing Authority. And some cases call it artificial. Some cases call it bad faith. It's essentially the same analysis. But this is the question that was always asked. Why are you doing this impairment but to create a voting class? They say, and this is all that's ever been said, is the debtor had no operations, no cash flow, no funds to play Clark County, and we did the 90-day delay so that we have time to figure out what their claim amount is. But we all know that this plan became effective upon the sale of the property when millions of dollars flowed into the debtor. There is absolutely no reason why at that time, just as a normal secured tax claim would be paid, that claim wouldn't just be paid out upon the sale of property as is done in the normal course of any kind of real estate transaction where you have an outstanding lien. You don't need 90 days after sale to figure out the tax lien. You could figure that out beforehand. That's the issue here, is there has been no business reason, no justification whatsoever, ever given that is legitimate on its face as to why this impairment was done, but for to create a voting class that would approve this plan because there is no other class that would approve it. That's really what this comes down to, and that satisfies the clear error standard. I understand what the Court considered and what they said, but district court just rubber-stamped it and said there's a substantial reason without actually analyzing it. And that's the same thing that the bankruptcy court said. It just said, well, they gave these reasons, and so there's reasons, and so therefore I'll find it. But that doesn't mean that it doesn't mean the clear error standard of a clear mistake where there is absolutely no reason that was ever given for doing this. Is there a case that says, I couldn't find one even that says if you give no reason? There is a host of cases that talk about that there needs to be some sort of business purpose. There is some suggesting that, but that's not even in our circuit. Well, and that's the issue. This circuit hasn't touched on the issue. And so we're all, and both sides will talk about it, on both issues, the class issue and then the artificial impairment of bad faith. You have a split between the circuits. We're making new law. You are making new law here. And if I could just add back on the class issue just for one second, because there was one point that I just wanted to raise for Your Honor on the statutory authority issue, is if you actually go to 1129, which I know talks about treatment, but if you go through the list in subsection 9, it talks about you have A, B, and C. Section B, it says, with respect to a class of claims of a kind specified, and these are the ones under 1123 that it says you can classify. Then with A and C, it says with respect to a claim, because you can't classify those. Then you get to D and it says with respect to a secured claim, not with respect to a class of secured claims. So that gives the implication that what Congress is saying here is a secured claim, just like an unsecured claim, cannot be classified. And as far as statutory authority, that really is what the Court can rely on. Well, I'm not sure that's what it says, because it's talking about treatment,  Thank you, Your Honor. Good morning, Your Honors. Thank you for the time this morning. I am Sam Schwartz. I'm here on behalf of RNS St. Rose. I think there are two sets of issues in front of the Court. First is jurisdiction, and then we can get to confirmation to touch on the jurisdiction issues that were raised by the Court and the questions raised by the Court for the First, I think the confirmation order is certainly a final order that can be appealed to this Court. I think to address the questions and concerns that the Court raised about whether the second appeal could cause some sort of unwinding of the RNS St. Rose plan, no. The RNS St. Rose plan is finished. The cash that was raised through the liquidation or auction of the land that RNS St. Rose held is now sitting, actually, in RNS St. Rose lenders' debtor in possession account. It is there to be distributed as ultimately these appeals are fleshed out, and then the plan is implemented in terms of the cash flow. Let me ask you. It seemed to me that the district court in the state system never did quite say branch banking doesn't have a claim.  I think they talked about branch banking has the claim they inherited from Colonial Bank that they bought, but then the court — But anyway, if in fact they — is there any way in the underlying that branch banking could come up with a secured claim that is better secured than the lenders' claim? I don't think better secured than the lenders' claim, Your Honor, because the first priority rather than second to the lender claim. No, Your Honor. I think they could not get ahead of lenders' claim now. That issue from the district court on the state level has gone all the way to the Nevada Supreme Court, and the Nevada Supreme Court has affirmed that decision. So what's in the district court case is a finding that lenders, RNS St. Rose lenders, loaned at least $12.3 million to RNS St. Rose. There's some dispute about whether there was interest that accrued after that, whether the interest was caught in the deed of trust. So BB&T could actually get money arguably in two ways. One, if there was somewhere a finding, it was determined that lenders' claim wasn't valid and that got back, then lenders wouldn't be paid at all. The money would pass lenders' second deed of trust and go on to BB&T. Or the more likely event, I think neither of which is likely, but of those two, the more likely of the two is that the bankruptcy court were to find that lenders' claim was capped at $12.3 million. There's almost $13 million left, maybe $12.8 million left in the dip account now, so there could be $300,000 or $400,000 that flows to BB&T for its second lien claim. But that would all be covered by the plan. The plan, as final, allows for that kind of an outcome. And it's normal to have claim objections that come up after the plan is confirmed because, in fact, in the bankruptcy context, we often don't want to fight about claims until we know how much money we have to fight about, unless there's an issue about good faith or insider claims or some of the things we're discussing today. But usually, you know, we sort of talk about real dollars and bankruptcy dollars. And so you may have a million-dollar claim, but we may only have $100,000 to pay it, so how much do we want to litigate over your million-dollar claim if there's only $100,000 at issue? So that's part of it. It's very natural. You finalize the plan, and then you fight about the money. So here, Your Honor, I would submit there is not a jurisdictional issue on this appeal. Confirmation order is final. It's gone to the district court. It's properly in front of this court. Putting that to the side, then, turning to what I think are the plan issues that are in front of you, I really see three. I think they've all been touched on. Classification, impairment of those claims that are put forward in those classes, and then the good or bad faith that's out there. One, I think all of it really is statutory, and I think we've all agreed at this point that the bankruptcy court's findings about bad faith are related to clear error. So turning first to the legal issues, 1122 states specifically that plans are to classify claims and to put similarly situated claims into separate classes. 1123 of the code then says you cannot separately classify unsecured tax claims. We've covered that. That's defined in Section 507 of the code. It doesn't say anything about separately classifying secured claims, and, in I would argue you have to separately classify a secured tax claim because it has its own rights based on where its position might be, by way of example. A secured state law tax claim, real property tax claim, typically springs up, springing lean, it goes to the front. It's ahead of everybody. An IRS secured tax lien that has been secured typically is behind everybody else and at the back. So those secured claims may have different positions and certainly different priorities in the waterfall scheme that comes under the bankruptcy code. So on that level I think it's important that secured claims be classified. So I think as you look at the code on its face, there's nothing improper about the separate classification of the secured claim of the Clark County Taxing Authority. That's proper. So then we get really to now what is impairment. And we certainly have now the 1124 argument about impairment, and we know from Allen J. Anaheim that's very broad. And here's where I think that the issues are getting conflated a little bit and I'm hoping to give the court some clarity at least on how I see it. So first, we have all these arguments about 1129A9C, which talks about how unsecured tax claims have to be paid over five years. So the court's aware it doesn't say you have to pay evenly over five years. It just says they have to be paid over five years. Then it says in 1129A9D, it says secured tax claims also are to be paid over that same period of time. However, there's a proviso to 1129A9 that says unless the parties otherwise agree. So essentially what I think counsel is arguing is in saying that the secured tax claim of Clark County had to be paid over five years is that that's the unimpaired treatment of the secured tax claim. Anything that changes that would fall into the impairment rubric that is set forth under the Bankruptcy Code under 1124. So the proposal of R&S St. Rose to pay the secured tax claim out of the transaction with a window of time to deal with issues that could come up with closing, that business justification, now we're talking about the good faith, or to deal with claim objection if there was a fight about Clark County's claim amount, that it leaves a window in there for that amount to be paid and for a claim objection to be resolved. That's really what the 90 days is about. So as we talk about the good faith that's sitting there, it's two levels. One is it was a good faith in the impairment. And I think one thing that is touched on in the briefs, and then I'll come to the good faith of the plan itself in a second, but really not argued, but it dawned on me as I was preparing, is that we're really not also talking about 1129B, 2A2, which talks about liens that are secured on property either have to ride through, have to be paid out of the proceeds, and they have to attach to the proceeds of a sale and a liquidation, which we had. And so really the debtor didn't have a lot of choices in terms of its rights. It could either choose to treat the secured tax claim in accordance with 1129A9D, which was we'll pay you over five years and we'll take the cash or we're going to stick it in an account and we'll just pay you, Clark County. By the way, Clark County could have objected to our proposed treatment of them to pay them in full in 90 days and actually could have said no, no, no, we want our money over five years. Happens. I know some hard money lenders who say don't pay me early. I want my money over time. So they would consider themselves impaired to be paid in full. Not normally the government, however. Certainly, Your Honor, yes. But Clark County can say we have a surplus and we don't want our money. Incredibly unlikely, yes. I was going to say and especially Clark County. Incredibly unlikely, yes, Your Honor. Very slim chance. But nevertheless, they could. But they didn't. And although they didn't get their treatment under 1129A9D, which would be unimpaired, they got their treatment that's allowed under 1129B2A2 and they got better treatment. And so around that I think it's not just the debtor's decision about whether we can impair them or not. Clark County had a say in it. And not only did they have a say, they voted for that treatment. They accepted it. They said, yes, we'll take that better treatment. They could have said, as counsel is arguing, no, no, no, no, you need to pay us on the day the money comes through. You can't hold us up for 90 days while maybe you decide whether you want to object to our claim. We're not going to let you do that either. They said, no, no, no, we're okay with that. We may have a claim fight. And so the court knows Clark County's claim was closer to a half a million dollars by the time we got to confirmation and the effective date. Because although it started off in the 40s in 2011 when the case was filed, by the time we got to the end, this was 40 acres of land. It was almost a half million dollars of debt to deal with. So their claim was moving around at the time. And that's part of why there was a carve out there. So then I think last is we get to good faith, which really, back to clear error, I think there's several layers of good faith. I've touched on them on the impairment. I think when you talk about the plan then itself, I think that Commonwealth and BB&T have a couple of problems. Number one, this was an auction. This was a sale of property, and we cited the case law in our brief for the court, that when you have a liquidation plan that's subject to open bidding and you have parties actively bidding, that's an indicia of good faith in and of itself in terms of the overall plan process. If Clark County hadn't been a separate class, would you have necessarily had the auction? I mean, would there have been a confirmed plan? I don't know if there was really any other choice. I'm not sure that there was an alternative. But the reason I think we're here is that there's still some question as to whether that would have been the result. I think, Your Honor, it certainly would have been the result because there wouldn't have been many choices. Now, had R&S St. Rose lenders not had a secured claim, had the Clark County Taxing Authority not had a secured claim, we may have needed the votes of BB&T and Commonwealth at that point. And we had talked about a consensual auction as we go forward. You could have had a debt-for-dirt plan, if you will, in terms of how other cases have solved these types of problems. So around that, there are other ways we could have gotten there. I confess I didn't realize until today that it's moved forward, the auction's taken place, and so forth. And so there's a question on rebuttal which we'll have to give a little time for. I'm going to be curious as to what's still at stake in this case if, in fact, there wasn't a serious alternative. But, okay, I'll proceed, and we'll get back to that. Thank you, Your Honor. And so you know about the auction. All the big homebuilders were running around, D.R. Horton, Lenar, KB Home, Nevada West was the ultimate winning bidder. But the stalking horse bid, if you were to look through the record, was $11.475 million, I believe it was, from KB Home. The ultimate bidder, Nevada West, ended up buying the property for $13.5 million. So we raised almost $2.1 million at the auction while we were there. It's quite incredible. In 20 minutes, you watch these homebuilders just outbid each other, and then they were done. It was quite crazy, actually, and fun to watch. But, nevertheless, there was real value created. It was a real auction. There were real national brands. A real auction. Let's go back to the question of the transaction which permitted the plan to be confirmed, that is, the arrangement that was entered into with the Clark County Taxing Authority. What was legitimate as an economic transaction about that? Well, I don't think, Your Honor, it was a transaction, you mean, entered into with Clark County. They already had a statutory state of it. Oh, but a deal was struck with them that permitted them to argue that they had an impaired claim. I mean, if nothing had been done with Clark County, could they have been put into a class as an impaired creditor? If nothing had been done with them, Your Honor, I'm not sure I understand what you mean by that. Well, the deal about pay in 90 days. Oh, certainly, Your Honor, they could have been paid on the effective date of the plan. As the Bankruptcy Court found, it wasn't as if the debtor had operations. It didn't have an ability to pay Clark County later. Once this asset was liquidated, that was that. It was turned into cash, which is what we're fighting about now, is cash to answer that question. But, yes, I think Clark County, we could have said, Clark County, we're going to put you in your own class, but we're going to call you unimpaired. And I think we had to put Clark County in its own class. I think our classification scheme may have failed because they were secured  Everybody. Right, so, I mean, I think they had to be put in their own class so we could protect them and make sure that it was clear what they were getting. And we could have said, well, we're going to pay you in accordance with 1129A9D, which was payment over five years. We're going to put your cash in an account and we're just going to pay you. Well, what was it that made them a voter? The fact that they were going to be paid 90 days out, yes. And so my question is, that seems to have been done for the purpose of making them a voter. Was there any other reason for the debtor to have done that? No, Your Honor, it was not done for the reason of making them a voter. That's certainly an upside for the debtor that that occurred. I mean, that allowed us to have another potential accepting class. BB&T and Commonwealth could have voted for the plan. We were liquidating the entity or the asset and creating a pile of cash for us to fight about rather than this piece of land that just had taxes to continue to accrue. But from that aspect, I think it wasn't done just for creating class, although it allowed that. I think there's no bad faith in following the statutory provisions of the Bankruptcy Code that allows you to create a separate class for a secured creditor. And then the reasons for treating them with payment over 90 days. One, there were some liens on the property and not liens, I'm sorry, easements on the property that caused some of the bidders to have concern. We wanted to make sure those weren't going to be an issue with closing. And then because Clark County's claim had been growing plus interest from the date of the filing to the time of confirmation, we wanted a window to object to their claim pre-closing or in there give ourselves 90 days if we wanted to file a claim objection so we could finalize their number and either pay them out of escrow or pay them from the debtor in possession account. So that was the business justification in terms of timing as well as we had no other operations. So to say to a debtor you have to hold your case open for five years, pay quarterly U.S. trustees fees with now the true melting ice cube. Well, nothing compels the debtor to wait the five years. I mean, that's the outside limit. Right. But I think, Your Honor, that's the unimpaired treatment. If we were to put Clark County in its own class and say we're going to pay you in accordance with 1129A9D over five years, even payments, pick your number, that would be the unimpaired treatment. But you're telling me why that's disadvantageous for the debtor's estate. Nothing compels the debtor's estate to wait five years and make the periodic payment. No, Your Honor. They could just pay it and be done with it. Correct, Your Honor. Once you do that, that makes it impaired. Well, but see, so we're still getting to my question. I can't figure out or the challenge offered by your colleagues is that there's no reason to do this but for the purpose of setting up an impaired creditor class so somebody can vote in favor of the plan, without which the plan couldn't have been confirmed. And that raises two questions. First, factually is it true? Because as Judge Smith was talking about, there's not a whole lot we have to work with as to what the legitimate basis for it was. And second, if it turns out that the reason for doing it is simply so they could create this class, is that improper under the bankruptcy code? No, Your Honor. I think on several levels. One, the code allows for separate classification, so I don't think there's anything improper about separately classifying a secured tax claim. The code provides for that. Even if the purpose of setting it up is simply to provide a vote in favor of the plan? No, Your Honor. It isn't just simply to provide a vote. It's, one, to set it up because the code allows it. Two, they had their own particular rights and within the property first in time to be paid. So I think you had to be clear about how you were going to treat that lien because then you get to that 1129B2A2 provision of the code that talks about liens have to ride through and attach to the proceeds. So we had to be clear about what we were doing with that lien and that gives the basis for separate classification. I would argue we had to do it that way so that it wasn't a bad faith to separately classify them. And then once you get away from 1129A9D and change the treatment, that five-year treatment, now you're impairing the claim under Allen J. Anaheim, even though it's better treatment than what 1129A9D proposes. It is impairment under the law of this circuit. And at that point, Clark County gets a chance to vote, of which they have a right to say, no, I want payment over five years. Or they have the right to step up and say, no, I want payment immediately. Clark County also agreed to that change of its rights, which allowed it to vote. So on that part, Your Honor, I think it's a very straightforward answer in terms of why under the code. The business justification, then, is that this was a liquidating plan. There's nothing left of this estate when this is over. And so to hold open that claim and pay it over five years was also a bad business decision for this debtor. It would incur more on costs, whether it's legal fees, U.S. trustees' fees, and things to keep its case open. That's a valid business justification. And then back to clear error, one thing I would like to highlight for the Court, there's no evidence from BB&T or Commonwealth of confirmation. They have no counter evidence about bad faith. They just argued it. No witnesses. Didn't cross-examine our deponent. Didn't come to the table with anything. And at that point, as we talked about in the prior case, that evidentiary record, I think, is closed. And so to put something else forward would be too much now. So on that point, I think I'm well over my time. Thank you, Your Honors. And I would ask that you affirm the Bankruptcy Court and District Court decisions. Thank you. I've long since lost track of the time for the appellants. But I do want to permit a brief rebuttal. And I want to hear kind of why we're here. Because if, in fact, the property's been liquidated, and liquidation seemed to be the really only alternative, what would happen if we say you win? That is an issue I'm actually going to ‑‑ because that's a BB&T issue that goes with what happens if, you know, there's still a priority dispute. And Mr. Wall will talk about that because it actually kind of falls into the second appeal. I was going to say, isn't that the second appeal? Yes, exactly. Which makes me ‑‑ I mean, I want to hear from somebody, why are we struggling over the plan anymore? Right. I understand I've got priority issues and questions about whether R&S's debtor's claim is valid and all that stuff. But that's elsewhere. Why are we here for this case? Right. And I think that's going to go into this. Well, what is it you want to talk about? Well, I was going to address the last issue that I was here talking about before, which was the impairment issue. And I wanted to talk about that because what kept getting ‑‑ Is there any time left officially? So we're making time. Okay. You've got two minutes. And I'll try and do it in one. Okay. We were talking about whether or not it was bad faith to classify the taxing authority. And that's not the position that's being asserted. And we have the position of whether or not it can be a class at all. But the issue is not whether or not it was made a class in bad faith. The issue is whether it was impaired in bad faith. And that's really what it comes down to. And the reasons we keep hearing, which have been addressed by the panel, is they said, well, we were a nonoperating entity, so why would we want to stay open to deal with this tax claim? And the question kept being asked, well, you could have paid them right at the beginning. The 1129A‑D ‑‑ Okay. So except for the moment that maybe I come to agree that this was done for the purpose of creating this class, so what? Then that gets into the case line. It's not addressed in this circuit, but the gerrymandering, bad faith, manipulating of the ‑‑ I mean, there is a reason for cram down. And the purpose of cram down is to have the affected creditors vote on a plan, because they're the ones whose interests are really at issue here. And when you can then just rig the system, essentially, so that you can create a class that can always vote and discredit everybody who actually is interested and affected by the plan, then it just kind of turns the bankruptcy code and the cram down provisions on their head. They somewhat make them illusory. But I guess we're getting to the next case. Right. But the bottom line is Judge Clifton's questions have got some validity. If everything is gone and all we've got is money now, it doesn't seem to me under this plan that it's any different than it would be under any plan, except who gets paid first, which all has to do with next case. Exactly. So then there isn't a problem. Why we have a plan problem. And I'm going to let Mr. Wall address that issue. Mr. Wall, please. No, no, we're still on this case. But I want to ‑‑ the confirmation case. And I'm trying to figure out why are we here in a sense if there's been a liquidation, all there is is cash, the issue is how to distribute it. That's the next case. I don't want to hear that. I want to hear why we're bothering to struggle over the confirmation anymore. Priority has not been decided in the bankruptcy court and the only issues about whether or not priority has been decided have to do with the issue of whether or not the State court decision has. That's the next case. That's the next case. This case is simply about the ‑‑ whether Clark County's vote to open the door to the cram down and to the plan of reorganization, and probably shouldn't even call it cram down anymore because it looks like liquidation was all there was. But understanding that priority issues are yet to come and are still alive, is there any real doubt about the confirmation having been accomplished? And if we sent you back on this issue, would you propose a different plan? I mean, you can't, can you? Yes, the creditors could then work together to propose a plan that would take into consideration all of the differences regarding how these issues. Speak English here. The property has been sold. The property sold. Is that subject to being unwound? No. So all we're talking about now is how to divide the money that's there. Yes, and priority is to divide it and in what order it will be paid out. But that only deals with the next case. How does that matter for the plan of reorganization? Because if there was a different plan of reorganization, it might be paid out in a different order. And if we were paid out in a different order, our client could get that money before their client gets the money. Well, not if the Court has adjudicated debtors. I wish I had a different name. R&S St. Rose Debtor, if they're in front, presumably you'd have to strike a deal with them. Lenders is in front. Lenders, right. Lenders thinks they're in front. That's the problem. Lender and debtors. Lenders is in front. Lenders is in front. That's still part of the part that's being litigated below. But even if lenders is in front, if they can't cram down a plan, then we can strike a deal with them. That's exactly what this is about. Well, you can strike a deal with them anyway. I mean, I'm going to say I'm at a complete loss as to finding out how it is the confirmation of the plan today makes any difference. I will talk with my colleagues about that, too, and maybe we'll ask to hear more about it. But if all that's left is a pile of money and nobody says that the auction can or should be unwound and it's simply a matter of divvying up the pile of money, there's certainly priority issues to be addressed. But the confirmation plan itself is not done. It sets the order in which the payments will be made. Well, does it? Because the priority issues are yet to be litigated. We're still litigating on those issues, yes. So how is it what's in front of us on the confirmation plan sets that priority? I don't think it does. It just provides for the liquidation, doesn't it? I mean, frankly, I wish I'd taken a more careful look at the plan because I didn't realize that things had moved forward. Does the confirmation plan itself provide for an order to be made? My understanding of the plan is that it places lenders' payments to be made before any payment goes to Brands Bank. But that's because they're first in line, and that's not being disputed in the other case. It's the amount of their claim that's being disputed in the other case. We're disputing the amount of their claims, and we're still disputing whether or not they're first in line. If their claims don't exist at all. But that's a totally different argument than you gave me at the first of this hearing. Then if that's what's really done, then the first, the case we got coming is far more important than this case because it's going to change the plan itself. And yet you said it wouldn't change the plan. It would just plain change the amount of payout. The case we have coming simply deals with one very small part, as you're saying, of what's coming, of figuring out who gets paid in what order. It's, it only has to do with one of the claims. It has to do with the validity of lenders, the amount, not the validity of lenders' claim and the other defenses to it, but the amount of lenders' claim. That's all it has to do with. That's all the. Lenders goes first. And lenders believes they go first. Well, there's nothing to challenge it. If all it's done, if all it's done is the amount, if that's all we're deciding in this other case is their amount, then we've already decided whether they go first. If there's more, number one is the amount. Number two is if their claims are legitimate at all. And that is the subject of not this appeal and not the next appeal. It's the subject of a separate appeal that's also pending before this Court. Roberts. With luck, a different panel will deal with that separate appeal. But let me make sure I understand this, because it may influence whether we decide this case at all. It's your understanding that this case is, this case, meaning the number of the one we're officially still on, 14-166.05, is not moot because if the plan, if we decide in your favor and the plan could not properly be confirmed, then the creditors could negotiate among themselves a deal. A different plan. A different plan, which, in fact, they could do anyway. Well, they're not going to do that if they've got a plan that's confirmed that's been crammed down. Well, but, see, because the only reason that lenders would negotiate is having to do with all the issues in the other case, not because of this, because nobody's now talking about anything other than the liquidation. It would certainly be a significant straw if they did not have their plan, which has already been crammed down on us in place. Okay. Well, and yes, please. First, Judge Nakagawa did make a specific finding that exclusivity had expired in R&S St. Rose's case, the debtors' case, we're calling it. I call them St. Rose and lenders to keep, just lenders kind of makes it easy. That'll help. So that exclusivity had expired. So the extent counsel wants to argue the creditors could negotiate with themselves, well, the creditors could have proposed their own plan. So that right was in front of them all the way through the case, and I think that ship had sailed upon confirmation. We could have had under 1129C competing plans. We didn't. And then separately, part of the argument of good faith that we're talking about now from the St. Rose viewpoint was that we were simply seeking to liquidate the asset and distribute it in accordance with the priorities established by the Nevada District Court. And so that in the order that had been affirmed by the Nevada Supreme Court, and that's all St. Rose was doing was liquidating its asset and distributing it to the parties, and then they can go fight about whether whose claim is first and whose is second later in lenders' case, which is coming up next. What's your impression as to whether the plan, which has been confirmed, speaks to the priority issue? Well, I think it directly follows the priorities laid out by the Nevada State District Court. Do you think there is any question? Is this case moot in your perspective? I think it's moot, Your Honor, yes, which is why I want to talk about that we're just fighting over a pile of cash. The ship has sailed, I think. The case just argued is submitted.
judges: Lasnik, Clifton, Smith